E-FILED
Friday, 23 September, 2022  09:32:02 AM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

SHERI W.,
     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
     Defendant.

Case No. 4:21-cv-04032-JEH

**Order**

    Now before the Court is the Plaintiff Sheri W.'s Motion for Summary Judgment (Doc. 15), the Commissioner's Motion for Summary Affirmance (Doc. 19), and the Plaintiff's Reply (Doc. 20).[1]  For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

    Sheri W. filed an application for disability insurance benefits (DIB) on November 15, 2016 and an application for supplemental security income (SSI) on April 26, 2017, alleging disability for both beginning on July 29, 2016.  Her DIB and SSI claims were denied.  Upon Sheri's request, a hearing was held on November 14, 2018 before an administrative law judge.  At that hearing, Sheri was represented by an attorney, and Sheri and a vocational expert (VE) testified.  An unfavorable decision was issued thereafter.  On appeal, the Appeals Council

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 12, 13).
[2] References to the pages within the Administrative Record will be identified by AR [page number].  The Administrative Record appears at (Docs. 6, 7, 8) on the docket.

remanded the matter for consideration of all material evidence, further consideration of Sheri's maximum work abilities with evaluation of the opinion evidence from Sheri's doctor, and further consideration of the medical necessity for an assistive device.

A second hearing was held on August 12, 2020 before a different ALJ, the Honorable David W. Thompson (ALJ). Sheri was represented by the same attorney, she again testified, and a different VE testified. Following the second hearing, Sheri's claim was again denied, on September 23, 2020. Her request for review by the Appeals Council was denied on December 29, 2020, making the ALJ's Decision the final decision of the Commissioner. Sheri timely filed the instant civil action seeking review of the ALJ's September 2020 Decision on February 26, 2021.

## II

Sheri argues the ALJ committed the following errors: 1) the ALJ's assessment of subjective complaints was patently wrong; and 2) the ALJ erred when assessing Sheri's residual functional capacity.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).

2

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.[3]   The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980).  The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  In the following order, the ALJ must evaluate whether the claimant:

1)   is performing substantial gainful activity;

2)   suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)   suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

---

[3] Compare 20 C.F.R. § 404.1501 *et seq.* (DIB) with 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

4)      is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Sheri claims error on the ALJ's part at Step Four.

## A

At Step One, the ALJ determined Sheri had not engaged in substantial gainful activity since July 29, 2016, the alleged onset date. AR 16. At Step Two, the ALJ determined Sheri had the following severe impairments: fractures of lower limb; status post total left hip replacement; valvular heart disease; and atrial fibrillation. AR 17. At Step Three, the ALJ determined Sheri did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 18. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant, as of July 29, 2016, the alleged onset date of disability through January 31, 2018, had the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except she was limited to occasional climbing of ramps, stairs and ladders; she was limited to no climbing of ropes and scaffolds; she was limited to occasional stooping, kneeling, crouching and crawling; and, she needed to avoid concentrated exposure to extreme cold, extreme heat,

4

fumes, odors, dusts, gases, unprotected heights and unprotected moving machinery.

AR 19.  At Step Five, the ALJ found that prior to February 1, 2018, considering Sheri's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Sheri could have performed.  AR 27.

> The ALJ made the following additional RFC finding:
>
> [T]he claimant, as of February 1, 2018, through the date of this decision, has had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional climbing of ramps, stairs and ladders; she is limited to no climbing of ropes and scaffolds; she is limited to occasional stooping, kneeling, crouching and crawling; and, she needs to avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, unprotected heights and unprotected moving machinery.

AR 28.  The ALJ determined that since February 1, 2018, Sheri had been capable of performing past relevant work as a newspaper carrier, sales clerk, and fast food services manager as the work did not require the performance of work-related activities precluded by Sheri's RFC.  AR 29.  The ALJ thus found that Sheri had not been under a disability from July 29, 2016 through the date of the Decision.

## B

Sheri first argues that the ALJ's rationale for dismissing her subjective complaints is based on perceived inconsistencies that do not exist.  She identifies four specific instances in which the ALJ allegedly illogically or erroneously considered the evidence pertinent to his subjective symptom evaluation.  The Commissioner argues the ALJ properly evaluated Sheri's subjective symptoms where the ALJ made determinations consistent with his duties under the regulations.  SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting

5

effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms.  SSR 16-3p, at *7-8.  The ALJ was, of course, required to "sufficiently articulate his assessment of the evidence to assure [the reviewing court] that the ALJ considered the important evidence . . . and to enable [the reviewing court] to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).

1

Sheri argues that the ALJ erroneously stated that no objective evidence confirmed Sheri was disabled where Sheri provided longitudinal objective evidence to support her allegations of pain and dysfunction.  She also contends that the ALJ erred in finding inconsistencies where there were none when assessing the response to a question about a pain scale.  The Court finds no such error in the ALJ's consideration of the objective evidence, and while it does with regard to the pain scale, the error was harmless.

Sheri lists several pages of the objective evidence she says fully supports her allegations of pain and dysfunction, much of which the ALJ covered in his Decision.  For example, the ALJ considered that Sheri required surgical repair to her left acetabulum with open reduction as well as femoral head dislocation after a motor vehicle accident in July 2016 which further required time in a nursing home/rehabilitation for three months.  The ALJ considered Sheri's recovery after July 2016 as detailed in medical records:  Sheri was doing well overall in October 2016, six weeks status post-surgery; she had been doing very well in a

rehabilitation facility, looked stable, and with well-controlled pain; her hip pain had resolved; she was doing better every day and had been doing some cooking and housekeeping as of December 2016; she went without treatment from March 2017 to August 2017 at which time Sheri's hip flexion was limited by pain and her gait was antalgic; and her September 2017 CT showed that her left hip had severe posttraumatic degenerative joint disease with loss of the superior joint space and marked surrounding heterotopic ossification.   The ALJ considered that Sheri ultimately underwent a left hip total arthroplasty in January 2018, and Sheri was thereafter doing well, both subjectively and objectively, was not using an assistive device to ambulate, and ambulated without a limp in March 2018.   The ALJ observed treatment notes stated Sheri was on chronic medical therapy for her cardiac issues and was maintaining sinus rhythm in April 2017, treatment notes stated Sheri did not have any new or current cardiac symptoms or complaints in April 2018, and cardiology findings in February 2020 were normal.

The ALJ found Sheri's statements about the intensity, persistence, and limiting effects of her symptoms were:

> inconsistent because they are inconsistent with the objective medical evidence of record . . . . The record does not include findings to show she has had, after treatment, the significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflect abnormalities associated with intense and disabling pain.  The claimant has been noted to ambulate effectively recently, and the record does not include radiographic imaging or other objective test results showing continuing orthopedic or musculoskeletal abnormality associated with the claimant's allegedly disabling pain.

AR 23.  The ALJ continued, finding that after hip replacement surgery Sheri did not require more than conservative type care and did not report significantly disabling medication side effects.

The Court can easily trace the path of the ALJ's reasoning from the aforementioned evidence to his conclusion that the objective medical evidence was inconsistent with the alleged *intensity, persistence, and limiting effects* of Sheri's symptoms.  What Sheri fails to recognize is that the ALJ did not entirely disregard her allegations of pain and dysfunction or find those allegations entirely uncorroborated by the objective evidence.  Instead, the ALJ found the objective medical evidence did not more fully corroborate the *extent* of intensity, persistence, and limiting effects of which Sheri complained.  He explained how he did so by way of illustration.  Throughout his discussion of the record medical evidence, the ALJ contrasted Sheri's need for treatment (i.e. surgical repair and surgical replacement) with Sheri's successful rehabilitation (i.e. from use of a walker to use of a cane to no cane, resolved hip pain) and normal examination findings (i.e. normal strength in lower extremities, no neurovascular deficits, intact sensation).  The ALJ thus cited to substantial evidence in support of that finding. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting that the phrase "substantial evidence" used throughout administrative law presents a threshold for evidentiary sufficiency that is "not high").  As for Sheri's contention that the ALJ misrepresented the record as to "conservative type care" and failed to inquire as to why more aggressive treatment was not offered after her hip replacement surgery, the Court is unconvinced.

At the first hearing, ALJ Kathleen Winters directly asked Sheri what treatment she had for her knees and what had been recommended as treatment. Sheri answered that her doctor did not want to "do anything unless they absolutely were bothering me to the point where it was too painful until I go in in January [2018] because he wanted to wait for me to be one year out, from past hip surgery before he really wanted to try to look and see if there was anything he could do to relieve my knees."  AR 118.  At the second hearing, the ALJ directly

8

asked Sheri if anything had been done for her knees given that she testified that she had been having ongoing knee issues.  AR 145.  Sheri answered nothing had yet been done, she had been having "mild issues" with her knees, she was going to get a hold of her doctors to update them and suggested COVID got in the way of things.  AR 145-46.  From such colloquies, it appears the ALJ *did* explore the reasons for why Sheri's knee complaints persisted as of the second hearing in August 2020 and the reasons for why she had not undergone more aggressive treatment.  *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (stating that "an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference").  Neither Sheri's testimony at the first or second hearings, in any event, definitively established that medical providers determined more aggressive treatment was necessary such that the ALJ erred with regard to his finding of "conservative type care."  *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ is not required to address in writing every piece of evidence or testimony presented but is required to provide an accurate and logical bridge between the evidence and his conclusions).

As for Sheri's argument that the ALJ erred in finding inconsistencies where there were none when assessing her response to a question about the pain scale, the Court agrees.  The ALJ explained at the second hearing that his pain scale went from one to 10, with one being no pain whatsoever and 10 being:  "the most excruciating pain imaginable;" "is pain so bad that all you can do is concentrate on the pain itself[,] you can't get to the cupboard in the kitchen to get medication;" and "is pain so bad that somebody will have to take you to the emergency room for treatment."  AR 157.  Sheri testified her pain on better days was five to six and on her worst pain days an eight to nine such that "It's not that I have to go to the hospital, but it's enough where . . . I'm laying in bed making sure I have my medication with me or having my Ibuprofen within reach."  AR 158.  As for her,

as the ALJ put it, "very worst days, where [she would] hit a ten out of ten," Sheri answered those days happened "maybe seven" days per month. AR 159. In his Decision, the ALJ accurately recited his definition of the pain scale which included his three separate elaborations of a "10." AR 23. He then detailed Sheri's answers as to her level of pain on better days and how many of those days there were and her level of pain on bad days and how many of those days there were. The ALJ then proceeded to detail that Sheri testified she had seven days per month when her pain was the worst – at a 10/10. *Id*. The ALJ accordingly found inconsistency between Sheri's subjective statements (seven days per month of the worst pain) and the objective medical record where there were no emergency room visits since 2019.

The problem for the ALJ is that his very own definition of 10/10 pain was a moving target, given that it had three variations; in other words, the ALJ created the potential for inconsistency in the first instance. Sheri answered those seven days per month when her pain level was 10/10, were "where it's absolutely I'm just staying in bed, not doing anything." AR 159. Her answer was so strikingly similar to that definition of 10/10 - "is pain so bad that all you can do is concentrate on the pain itself[,] you can't get to the cupboard in the kitchen to get medication" – that the ALJ was reaching when he found inconsistency. Nevertheless, the Court finds the ALJ's error harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). This was just one finding of inconsistency between Sheri's subjective symptom allegations and the record evidence, the rest of which are beyond reproach. As discussed above, the ALJ sufficiently illustrated and supported his finding of inconsistency between the objective evidence of record and Sheri's statements of pain. The ALJ also relied upon other portions of record

10

evidence to reject the extent of limitation alleged by Sheri.  Specifically, he pointed to the inconsistency between Sheri's description of her activities and her allegation of complete and totally disability (unchallenged by Sheri).  Also, as addressed below, he properly found persuasive certain medical opinions over others.  *See* 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you. We also consider the medical opinions as explained in § 404.1520c").[4]  The Court cannot say the ALJ's conclusions with regard to Sheri's subjective symptoms was patently wrong. *See Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (reiterating that the Seventh Circuit court of appeals "will uphold an ALJ's credibility determination unless that determination is patently wrong'"); *and Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014) (explaining "patently wrong" means "the decision lacks any explanation or support").

## 2

Sheri also argues the ALJ failed to properly consider the medical opinions and instead relied upon his own evaluation of the hearing testimony and the testimony of the VE.  In particular, Sheri contends that the ALJ contradicted his own rationale for dismissing the opinions of the State Agency medical consultants, and he erred in dismissing the opinions of Janice Levsen, FNP-C and Kristine McIntee, ARNP on the basis that that they were opining on issues reserved to the Commissioner.

As for Sheri's argument of contradiction, the ALJ did no such thing.  The ALJ explained that State Agency findings concerning Sheri's ability to perform

---

[4] Neither party explicitly addressed the fact that different versions of certain regulations applied to claims filed before March 27, 2017 (Sheri's DIB claim) and to claims filed on or after March 27, 2017 (Sheri's SSI claim).

work activities in determinations needed in February 2017 and August 2017 "may have been supported by the medical evidence at the time; as of January 31, 2018, multiple medical documents were added and the state agency determinations did not represent a longitudinal view of the claimant's impairments." AR 24. The ALJ then detailed that since January 2018, testimony had been received by Sheri at two hearings as well as testimony from two VEs and, ultimately, the RFC assessments described in the Decision represented "a more accurate, longitudinal view of the claimant's medical history and are based on all evidence of record through the date of this decision." *Id*. In giving Michael Willey, M.D.'s February and August 2017 opinions that Sheri did not have any work restrictions more persuasive weight, the ALJ observed they were consistent with the treatment notes from February and August 2017: in February 2017, Sheri was doing well six-months post-operative and had only minimal pain and only a slight limp; and in August 2017, Sheri had good strength in her lower extremities with no neurovascular deficits even though she complained of pain and becoming more sedentary. The ALJ further observed that treatment notes indicated Sheri's condition improved following her left total hip arthroplasty where the most recent treatment notes indicated her muscle tone was good and her gait and station were intact. In giving Denise Peck, ARNP's March 2018 opinion that Sheri could return to all usual activities more persuasive weight, the ALJ noted it was consistent with treatment notes from March 2018 that indicated Sheri's report of doing well and no use of an assistive device to ambulate.

Fatal to Sheri's argument are the explanations the State Agency doctors provided. The first State Agency doctor very clearly stated as to Sheri's physical impairment that "[w]hile the injury was severe at the time of adjudication of this claim, *it is anticipated* that the impairment will not last 12 months, and will, therefore, be non-severe at the end of 12 months." AR 182 (emphasis added). The

12

second State Agency doctor stated his "assessment has been modified to reflect [the claimant's] *current* condition" after stating that "[u]pon review of examination finding determine [claimant's] mental condition is non severe and [claimant] physical condition would be non-severe at the end of twelve months."  AR 212 (emphasis added).  Given that the first State Agency consultant merely anticipated a certain result and the second provided an opinion as to Sheri's then-current condition, the ALJ logically concluded that their opinions did not present a longitudinal view of Sheri's impairments such that they were of limited probative value or persuasion.  There is no contradiction between the ALJ thus concluding and the ALJ finding that other doctors' opinions (Dr. Willey and Peck) on particular dates were consistent with treatment notes from those particular dates and with later treatment notes that similarly indicated Sheri's post-operative improvement such that the opinions supported the "notion that [Sheri] is not totally disabled."  AR 24.  Of course, the last State Agency opinion was rendered in August 2017 and the later "more persuasive" opinion by an attending medical source (Peck) was provided in March 2018, at which time the ALJ had the benefit of treatment notes that extended beyond August 2017 against which he could compare opinions of record.

Moreover, the ALJ properly considered the consistency of the medical sources' opinions.  *See* 20 C.F.R. § 404.1520c(c)(2) (providing the factor of consistency will be considered when considering medical opinions such that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be"); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion").  Also, 20 C.F.R. § 404.1545 clearly states that an

ALJ is to assess a claimant's RFC "based on *all* the relevant evidence in [the claimant's] case record," and 20 C.F.R. § 404.1546 clearly states that "the administrative law judge . . . is responsible for assessing your residual functional capacity."  20 C.F.R. § 404.1545(a)(1) (emphasis added); 20 C.F.R. § 404.1546(c). Sections 404.1545 and 404.1546 reveal the ALJ relied on proper reasons to reject the State Agency doctors' opinions.  The ALJ's statement as to testimony received by two VEs after the State Agency determinations does not concern the Court as it does Sheri.  The statement was an errant one in light of the Decision as a whole which does not indicate the ALJ actually relied on the VEs' testimony to resolve medical questions in this case.

As for Sheri's contention that the ALJ erred in dismissing Levsen's and McIntee's opinions because not every portion of their opinions was on an issue reserved to the Commissioner, the ALJ did not commit reversible legal error. Statements that a claimant is or is not disabled, able to work, or able to perform regular or continuing work are statements on issues reserved to the Commissioner that are "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled under Act."  20 C.F.R. § 404.1520b(c)(3); *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled"). Here, treating medical source McIntee wrote in a December letter with the heading "Temporary Status," that Sheri was under her care for "the diagnosis of s/p revision total hip arthroplasty and meets the definition of handicapped in the Iowa Code, Chapter 321L.1," and the handicap was temporary for a period of six months.  AR 3875.  The ALJ afforded no probative or persuasive value to McIntee's opinion because the "issue of whether the claimant is handicapped or disabled is the ultimate issue in this case and is reserved to the Commissioner of Social Security Administration, delegated to the undersigned[.]"  AR 24-25.

14

The ALJ's conclusion was a reasonable one as it conformed with the regulations. Sheri elaborates in her Motion upon the definition of "person with a disability" as defined by Iowa Code. All that does is further convince the Court the ALJ properly rejected McIntee's opinion. As the Commissioner points out, 20 C.F.R. § 404.1504 provides in relevant part, "Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules."

Attending Nurse Practitioner Levsen opined in July 2017 that Sheri qualified for an Illinois certificate of persons with disability parking placard, Levsen stated Sheri could not walk without assistance of a wheelchair, walker, crutch, brace, or other prosthetic device or without the assistance of another person, and Levsen stated the disability was permanent. In September 2017, Levsen reported: Sheri was unable to work full-time or part-time and could work zero hours per day; Sheri may possibly be able to return to work when evaluated on November 22, 2017; and Sheri would require hip replacement but was unable to sit for long periods of time and was therefore unable to participate in a classroom assignment, reporting that was due to traumatic hip and pelvic fracture as well as deep vein thrombosis and hip dislocation. At that time, Levsen, as the ALJ put it, "admitted" that Sheri, with proper medical treatment, would possibly be able to return to work. AR 25. In November 2017, prior to hip replacement, Levsen opined again that Sheri qualified for a disabled parking placard, and that Sheri was severely limited in the ability to walk due to an arthritic, neurological, or orthopedic condition and that she could not walk 200 feet without stopping to rest because of one of those conditions. The ALJ found Levsen's opinions unpersuasive and of no probative value after highlighting the following: Levsen provided no references

of record in support of her opinions; she did not cite to specific medical evidence such as examination results, diagnostic tests, or laboratory results in support of her opinions; and she addressed her opinions in the realm of Sheri not being able to work. *Id*. The ALJ continued, "The issue of whether the claimant is able to work is the ultimate issue in this case and is reserved to the Commissioner of Social Security Administration, delegated to the undersigned." *Id.*

The Court again finds the ALJ's conclusion, this time as to Levsen, was a reasonable one as it conformed with the regulations. Sheri argues the ALJ erred in finding that a treating source cannot opine as to the number of hours a patient can work. But a reasonable mind could accept that the statement that a claimant "can work zero hours per day" is the same as saying the claimant is unable to work or unable to perform regular or continuing work – issues reserved to the Commissioner. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (explaining that where substantial evidence supports an ALJ's disability determination, a reviewing court must affirm the decision even if "reasonable minds could differ concerning whether the claimant is disabled"). The ALJ also accurately and sufficiently explained that Levsen did not provide references in the record in support of her opinions. *See* 20 C.F.R. § 404.1520c(c)(1) (providing that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be"); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion"). Levsen merely listed diagnoses of traumatic hip fracture, hip osteoarthritis, and deep vein thrombosis. Notably, elsewhere in the Decision the ALJ considered that Sheri had no neurovascular deficits in March 2017, an

16

intact distal neurovascular exam in March 2018, and was neurovascularly intact in June 2019.

3

Next, Sheri argues that the evidence showed her use of a cane was unquestionably medically necessary for most of the adjudicated period. She says the ALJ made a disallowed medical determination when he inexplicable found she no longer needed a cane on the date of her total hip replacement surgery when her doctor specifically stated she would need to use a walker or crutches for two to three weeks after surgery and then a cane until her limp was gone. While she also argues the ALJ failed to properly consider evidence that supports her allegations of pain and misconstrues evidence, that argument is repetitive of the argument Sheri made above which the Court has rejected.

With regard to Sheri's use of a cane, the ALJ observed more recent treatment notes (from August 2018 onward) did not mention Sheri's use or need of an assistive device. Nevertheless, the ALJ considered Sheri's somewhat consistently observed use of a cane and antalgic gait between December 2016 and October 2017. The ALJ next detailed that after Sheri's hip replacement surgery, she was instructed to use a walker or crutches the first two weeks and progress to a cane until the limp was gone, encouraged to put as much weight on her new hip as much as possible, and instructed to continue exercises provided her by her physical therapist. Specifically with regard to the period after Sheri's hip surgery in January 2018, Sheri was noted in May 2019 to have an antalgic gait while recovering from a toe injury but was walking with a non-antalgic gait with no apparent deficit in balance or coordination by June 2019. The ALJ observed doctors consistently reported Sheri's normal strength and normal gait from October 2018 through March 2020, and, overall, the "medical evidence of record shows that after surgery, the claimant needed the use of a cane during recovery,

17

and there was no mention of the need for a cane since January 2018." AR 26. The ALJ concluded, "Therefore, through January 2018, the claimant was capable of performing sedentary type work and, thereafter, was able to walk, stand, and sit for at least eight hours each per workday." *Id*.

It is rather easy for the Court to trace the path of the ALJ's reasoning from evidence pre-January 2018 (Sheri was consistently noted with a cane or antalgic gait) to his *sedentary* RFC finding and from evidence post-January 2018 (evidence did not mention use or need for a cane) to his *light* RFC finding. The Court does not see where the ALJ made a medical determination regarding the weeks after Sheri's hip replacement surgery. Instead, the ALJ explicitly acknowledged the record evidence showed Sheri needed the cane during recovery. Additionally, the Court finds the ALJ relied upon substantial evidence in support of his conclusions as to Sheri's medical need for a cane. *See Biestek*, 139 S. Ct. at 1154 (repeating that substantial evidence is "more than a mere scintilla"). Sheri's arguments as to the ALJ's consideration of her cane use amount to nitpicking. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (stating that a court is to give an ALJ's decision "a commonsensical reading rather than nitpicking at it").

## C

Finally, Sheri includes an argument that the ALJ erred when assessing her RFC. But the argument is little more than citations to authority, conclusory sentences, and a statement that she would have qualified for benefits pursuant to the Medical Vocational Guidelines had it not been for the ALJ finding "there was a medical improvement that miraculously allowed Sheri to perform light work within a few days from when she turned 55[.]" Plf's MSJ (Doc. 15-1 at pgs. 21-22). Of significance, in support of this, her second point of error, Sheri refers the Court back to every argument she made in support of her first point of error. Accordingly, the Court will not separately address this second point of error which

is also under-developed when considered without reference to Sheri's preceding arguments. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments . . . are waived"). Remand is not warranted in this case.

**IV**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 15) is DENIED and the Defendant's Motion for Summary Affirmance (Doc. 19) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Sheri W., is AFFIRMED." This matter is now terminated.

*It is so ordered.*

Entered on September 23, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE